**Michael I. Inzelbuch, Esquire**
Sovereign Bank Building
555 Madison Avenue
Lakewood, NJ  08701
Phone: 732-905-0325
Fax: 732-886-0806
MII-5635

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| W.G. ON BEHALF OF J.M., | Docket No.: _____ |
| Plaintiff, | Judge: _____ |
| v. | |
| WALL TOWNSHIP BOARD OF EDUCATION, | **VERIFIED COMPLAINT** |
| Defendant. | |

Plaintiff W.G. (Plaintiff or W.G.), on behalf of his nephew, J.M.,[1] by way of Complaint states the following:

**PARTIES**

1. Plaintiff, the uncle and legal guardian of J.M., and J.M. a minor, reside together at 2521 Jean Marie Court, Wall Township, New Jersey 07719.  The offices of Wall Township Board of Education (Defendant or Wall Township) are located at 1630 18th Avenue, Wall Township, New Jersey 07719.

---

[1] W.G. is the uncle of J.M. and also J.M.'s legal guardian.

2. J.M. is a classified student. He has an educational disability and is eligible for the services and protections of the IDEA.[2]

3. Defendant is charged with the conduct, supervision, and management of the Wall Township schools and is the local education agency, as defined in 20 U.S.C. § 1401(19). Defendant is responsible for providing a free, appropriate public education (FAPE) for children with disabilities residing within the District.

## JURISDICTION

4. By this action, brought pursuant to 20 U.S.C. § 1415(i), Plaintiff seeks relief against Defendant Wall Township Board of Education for denial of rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, New Jersey's Special Education Laws, N.J.S.A. 18A:46-1, *et seq.*, and implementing federal and State regulations. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(1), (2). Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

5. This Complaint comes before this Court following the September 20, 2011 Interlocutory Order of Administrative Law Judge (ALJ) Jeff S. Masin of the New Jersey Office of Administrative Law (OAL) on in a due process proceeding under the IDEA, brought by Plaintiff against Defendant.

## VENUE

6. Venue in this district is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

---

[2] It should be noted that J.M. was wrongly classified for numerous years. As part of the Settlement Agreement herein (see below) and recently completed Evaluations the district agreed to reclassify J.M. as Multiply Disabled ("MD"). See the attached Evaluations as follows: Speech & Language Assessment of Lynn Chodos, MA, CCC/SLP of Children's Center Programs, LLC (**EXHIBIT "F"**); Learning Evaluation of Dana Hice DePugh, M.Ed., LDT-C (**EXHIBIT "G"**); and Neuropsychiatric Evaluation of Dr. David J. Gallina, M.D., PA (**EXHIBIT "H"**).

7. The due process petition in this matter was filed on or about May 2, 2011 (**EXHIBIT "A"** without attachments).  In it, W.G. sought, in part:

> (1.) A complete and legible copy of J.M.'s file, including, but <u>not</u> limited to, report cards, progress report(s), attendance file, child study team file, guidance file, evaluation(s), testing (if any) [formal or otherwise], lesson plans, documentation (if any) evidencing how the parents and consultant(s) concerns with regard to J.M.'s schooling were addressed, home instruction records/testing/data, time/date records of home instruction services received, any and all IEP's; "marked-up" Goals and Objectives, communication books, journals, logs, teacher data, correspondence/e-mails/memorandums, etc., between the parents and the District, Report Cards, Progress Reporting and any and all documentation recorded as to Behavioral Interventions, previously requested and should be considered an on-going request. It should be noted that if the District does not provide same in accordance with New Jersey Administrative Code a Complaint Investigation will be filed;
>
> (2.) Independent Evaluations (as previously requested) in the following domains:
>   a. Psychological
>   b. Learning
>   c. Speech
>   d. Psychiatric;
>
> (3.) Reimbursement of any and all monies expended by the guardians of J.M. in providing J.M. with the much needed services;
>
> (4.) An I.E.P. that provides appropriate goals and objectives for J.M. and is based on objective criteria and that is arrived at by thorough and objective evaluations with meaningful parental input and particularly suited to J.M.'s unique and *individualized* needs allowing him to make meaningful progress;
>
> (5.) An appropriate program as described, in part, above for J.M. based on his unique and *individualized* needs, including, but not limited to, a truly *individualized* IEP, with related services, parent/guardian training, behavioral supports;

(6.) An appropriate and truly i*ndividualized* placement for J.M. based on his unique and *individualized* needs as described above;

(7.) Reimbursement of any and all out-of-pocket expenses expended by the guardians of J.M. including, but not limited to attorney fees;

(8.) Reimbursement of any and all monies paid by the guardians for private therapies J.M. received/receives since enrollment within the district to the current time due to the district's **failure** to provide appropriate therapies for J.M. based upon him *individualized* needs;

(9.) Reimbursement for any and all costs due to the districts **failure** to provide a free and appropriate public education ("FAPE") to J.M., including, but not limited to, Evaluations and on-going therapies;

(10.) Compensatory Education for the time period that the school district knew, or should have known, that J.M. was not provided with *individualized* special education instruction, thus, preventing J.M. from receiving a free and appropriate public education ("FAPE"); and

(11.) Any and all other relief the Court may deem appropriate.

The parties entered into an Agreement in front of ALJ Joseph Martone on July 7, 2011 moments prior to the Hearing commencing according to which they proposed that J.M. would attend Lewis School, Princeton, New Jersey, at the district's expense, transportation would be provided at the district's expense. (See Settlement Agreement and Board of Education approval attached hereto as **EXHIBIT "B"**.) Lewis School is unaccredited and unapproved by the New Jersey Department of Education.[3]  The parties presented Judge Masin with the Settlement Agreement seeking his approval.

---

[3] After ALJ Martone stated he could not approve the Settlement (See correspondence dated July 26, 2011 attached hereto as **EXHIBIT "C"**) the parties appeared before The Honorable Jeff S. Masin, ALJ.

8.   On September 20, 2011, Judge Masin issued an Interlocutory Order (**EXHIBIT "D"**) denying the request for approval.  He found:

> As the matter involves a significant question regarding the authority of administrative law judges to approve any settlement that proposes a prospective placement in a school that is not accredited, and as I have concluded that no such authority exists, … I am constrained to conclude that such Orders [approving such placements in unaccredited schools] are inappropriate.
>
> …
>
> As there is no authority for an Order which will authorize the prospective placement of a classified student in a non-accredited private school, I decline to approve the proposed placement in the Lewis School.
>
> . . .
>
> Counsel for petitioner has pointed to a footnote in a decision issued by United States District Judge Freda Wolfson in L.M. v. Evesham Township Board of Education, 256 F.Supp. 2d 290 (D.N.J. 2003) . . . In footnote 12, Judge Wolfson stated:
>
>> In addition, the sentence stating placement "could also be made by order of a court of competent jurisdiction" should be interpreted to refer to **prospective** placements ordered by a court to begin most likely after a due process challenge has been adjudicated. Such an interpretation is supported by the sentence following the "court of competent jurisdiction" language, which states that the purpose of the Amendment was to "clarify the sponsor's intent that the placement must provide the student with a through and efficient education."  As noted above, the phrase "through and efficient education" refers to a New Jersey constitutional requirement that applies to

> LEAs, not parents.[L.M. v. Evesham Township Board of Education, supra, at footnote 12] (emphasis added)

> Interesting as that idea is, there appears to be no case that has followed up on that theory . . . Perhaps Judge Wolfson's comments may point to the possibility that after a fully adjudicated due process hearing (as opposed to a settlement) in which the proofs actually establish that no other alternative meeting state standards exists to provide the child with FAPE, that an order could issue for such a placement. But that case, where there is simply no alternative, may not exist in reality, and if it does, then the validity of Judge Wolfson's thoughts can be tested. At this time, no court appears to have addressed any such case.

(Interlocutory Order of 09/20/11, at pgs. 2, 10.)[4]

9. Plaintiff has asserted that nothing in N.J.A.C. 6A:14-4.3(b)(10) prohibits the ALJ from considering an unaccredited school as an appropriate placement under the IDEA and New Jersey law. In fact, N.J.A.C. 6A:14-4.3(b)(11) permits consideration of any placement that, while not satisfying the preceding program options, nonetheless offers "Instruction in other appropriate settings according to N.J.A.C. 6A:14-1.1(d)."

10. The IDEA and New Jersey law contemplate a variety of placement options available for the special education of classified students. N.J.A.C. § 6A:14-4.3, implementing the Naples Act, N.J.S.A. 18A:46-14, provides:

> (b) If it is determined that a student with a disability cannot remain in the general education setting with supplementary aids and services for all or a portion of the school day, a full continuum of alternative placements as set forth below shall be available to meet the needs of the student. Alternative

---

[4] It should be noted that both ALJ Martone and Masin have approved numerous settlements that call for students to attend unapproved and unaccredited schools such as Lewis with ALJ Masin in **June 2011** approving such a settlement in the matter of N.B. & T.B. o/b/o N.B. v. Point Pleasant Borough BOE, EDS-06896-11; Ref.: 2011-17234 (See attached **EXHIBIT "E"**).

>   educational program options **include** placement in the following:
>
>   1. Single subject resource programs outside the general education class;
>   2. A special class program in the student's local school district;
>   3. A special education program in another local school district;
>   4. A special education program in a vocational and technical school;
>   5. A special education program in the following settings
>        i. A county special services school district;
>        ii. An educational services commission;
>        iii. A jointure commission; and
>        iv. A New Jersey approved private school for students with disabilities or an out-of-State school for students with disabilities in the continental United States approved by the department of education in the state where the school is located;
>   6. A program operated by a department of New Jersey State government;
>   7. A community rehabilitation program;
>   8. A program in a hospital, convalescent center or other medical institution;
>   9. Individual instruction at home or in other appropriate facilities, with the prior written notice to the Department of Education through its county office;
>   10. An accredited nonpublic school which is not specifically approved for the education of students with disabilities according to N.J.A.C. 6A:14-6.5;
>   11. <u>Instruction in other appropriate settings according to N.J.A.C. 6A:14-1.1(d)</u>; and
>   12. An early intervention program (which is under contract with the Department of Health and Senior Services) in which the child has been enrolled for the balance of the school year in which the child turns age three.

N.J.A.C. § 6A:14-4.3 (emphasis added).

11. By *mischaracterizing* the Settlement Agreement as a Naples Act placement, Judge Masin f*ailed* to take cognizance of subsections 11 and 12 in the foregoing statutory provision. Subsection 11 (as qualified by N.J.A.C. 6A:14-1.1(d)) contains no requirement that the appropriate placement have specific accreditation by a governmental or independent agency. This provision, N.J.A.C. § 6A:14-4.3(b)(11), vests the ALJ with authority to approve the settlement granting J.M.'s placement at Lewis School upon a determination that it provides him FAPE in the least restrictive environment by appropriately certified and qualified staff in a handicap-accessible facility. Because Lewis School meets these standards, the ALJ may approve the proposed settlement under the authority of this provision.

12. In short, the Naples Act and its implementing regulations, if applicable, do not deprive the ALJ of the broad equitable discretion to carry out the purposes and objectives of the IDEA and New Jersey law to approve instruction at an appropriate educational placement for J.M.

## CLAIM FOR RELIEF

13. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 13 of this Complaint with the same force and effect as though each allegation was fully set forth at length herein.

14. <u>The ALJ's September 20, 2011 decision presents a purely legal question such that it is subject to this Court's review under 20 U.S.C. § 1415(i)</u>. ALJ Masin scheduled this matter for a Plenary Hearing on November 15, 2011 before The Honorable Elia A. Pelios. While ALJ Masin acknowledged that while he could not

*allegedly* approve a Lewis School placement by way of Settlement, he did state, however, in part:

> Counsel for petitioner has (also) argued that the State standards in New Jersey actually do permit placement in an unaccredited setting, citing the placement of classified children in camps for purposes of an extended school year (ESY). It is accurate to state that these camps are, most likely, not accredited as educational institutions, although they may well be accredited as camps under the auspices of national or other camp-accreditation agencies. Placement in a camp for ESY often serves to provide a classified child with a socialization experience that is vital to the child's educational needs and therefore to the provision of FAPE for such child. But it is I think fair to recognize that in general summer camps are not viewed as educational institutions, despite that they serve the function of providing socialization for all attendees, whether or not classified . . . But the fact that they may not be accredited as educational institutions in the manner that schools are does not detract from the legislative command that schools must be accredited If they are to meet state standards . . . As there is no authority for an Order which will authorize the prospective placement of a classified student in a non-accredited private school, I decline to approve the proposed placement in the Lewis School.[5]
>
> (Interlocutory Order of 09/20/11, at pgs. 9, 10)

However, Plaintiff *alleges* that holding a Hearing that would last no less than four (4) days) over many months would not be in the best interest of either party nor foster judicial economy.

---

[5] Respectfully, ALJ Masin's comments with regard to Extended School Year ("ESY") are <u>without</u> any basis and, in fact, are in opposite to both federal and state law with regard to Extended School Year ("ESY") programs. Moreover, the New Jersey Department of Education issued a Memorandum on May 24, 1999 which specifically stated otherwise. (See attached **EXHIBIT "I"**)

15. The ALJ's September 20, 2011 decision was erroneous as particularly set forth in paragraphs 9-12 above and as will be demonstrated more fully in forthcoming proceedings.

**WHEREFORE**, Plaintiff demands judgment against Defendant Wall Township Board of Education as follows:

(a) Entry of an Order reversing the ALJ's Interlocutory Order;

(b) Entry of an Order approving the parties' Settlement Agreement establishing Lewis School as J.M.'s appropriate educational placement for the for the school years delineated in the Agreement;

(c) Entry of an Order requiring that Defendant shall provide payment and/or reimbursement for the placement of J.M. at Lewis School in the 2011-2012 school year and for the related transportation costs;

(d) Reasonable attorney's fees and costs for the State and federal proceedings;

(e) An adjournment of the Hearing scheduled in front of ALJ Pelios (scheduled to occur on November 15, 2011) until such time as the legal issue herein can be resolved; and

(f) Such other relief as the Court deems just and appropriate.

        **MICHAEL I. INZELBUCH**
        Attorneys for Plaintiff

        *Michael I. Inzelbuch, Esquire*
        _____
        **Michael I. Inzelbuch, Esq.**

Dated: **October 3, 2011**